UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LACEY SCHMICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20 CV 1718 RWS |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## MEMORANDUM AND ORDER

Plaintiff Lacey Schmich ("Schmich") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's ("Commissioner") decision to deny her application for disability insurance benefits. I will affirm the decision for the reasons explained below.

## PROCEDURAL HISTORY

Schmich filed a Title II application for disability insurance benefits on December 16, 2018.  The claim was denied and Schmich filed a timely request for a hearing.  The ALJ issued his decision on April 10, 2020, finding that Schmich was

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

not entitled to benefits.  The Appeals Council denied Schmich's request for review.

She then filed this case seeking judicial review of the Commissioner's decision.  She

argues that the ALJ erred in failing to identify her anxiety or depression as severe

medical impairments.

## LEGAL STANDARD

To be eligible for disability insurance benefits under the Social Security Act,

a plaintiff must prove that she is disabled.  Pearsall v. Massanari, 274 F.3d 1211,

1217 (8th Cir. 2001); Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555

(8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [her]

physical or mental impairment or impairments are of such severity that [she] is not

only unable to do [her] previous work but cannot, considering [her] age, education,

and work experience, engage in any other kind of substantial gainful work which

exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner conducts a

five-step analysis.  See 20 C.F.R. § 404.1520; Pate-Fires v. Astrue, 564 F.3d 935,

942 (8th Cir. 2009).  The Commissioner begins by deciding whether the claimant is

engaged in substantial gainful activity.  If not, the disability analysis proceeds to the next step.   At this step, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities.   If the claimant's impairment(s) is not severe, then she is not disabled and the analysis ends.  If the claimant has a severe impairment, the Commissioner then determines whether the impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If the claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  If the impairment is not equivalent to a listed impairment, then the Commissioner proceeds to the fourth step to determine whether the claimant can perform her past relevant work.  If so, the claimant is not disabled.  If not, at the last step, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the national economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence.  Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  See, e.g., Battles

v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  In considering a claimant's subjective complaints, the ALJ is required to consider whether her complaints are consistent with the medical evidence.  See Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily activities, the duration, frequency, and intensity of the pain, precipitating and aggravating factors, dosage, effectiveness and side effects of medication, and functional restrictions).[2]  When an ALJ gives good reasons for the findings, the court will usually defer to his findings.  Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

In reviewing an ALJ's denial of Social Security disability benefits, my role is limited to determining whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence on the record as a whole.  Pate-Fires, 564 F.3d at 942.  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to

---

[2] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character.  However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record."  See SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); Lawrence v. Saul, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

support the Commissioner's conclusion." Id.  In determining whether the evidence is substantial, I must consider evidence that both supports and detracts from the Commissioner's decision.  Id.  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision.  Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome.  McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

## ADMINISTRATIVE RECORD

With respect to the medical records and other evidence of record, I adopt Schmich's recitation of facts set forth in her Statement of Uncontroverted Material Facts, to the extent that they do not directly conflict with the Commissioner's Statement of Uncontroverted Material Facts and are supported by the record. Specific facts will be discussed as needed to address the parties' arguments.

## HEARING BEFORE THE ALJ

Schmich was 31 years old when she appeared for her hearing before the ALJ on January 9, 2020.  She was represented by an attorney.  She has a high school diploma and completed some college.  (Tr. 36.)  She last worked part-time at Subway.  (Tr. 37.)  She has not worked since 2012.

Most of the hearing focused on Schmich's health prior to June 30, 2017 (her date last insured).  She testified about her physical problems, including polycystic ovarian syndrome, fibromyalgia, back pain, and gallbladder pain.  (Tr. 38-40.)  She also described experiencing "debilitating" anxiety and depression during the relevant time period.  (Tr. 38.)  When her attorney asked if any life events might have caused these symptoms, Schmich stated that she moved from Utah to Missouri in 2014.  (Tr. 38.)

Schmich's attorney asked her about the assessment that Ms. Julie Bahr, a psychotherapist, conducted in 2019.  Schmich testified that she experienced the same limitations that Ms. Bahr noted—difficulty interacting with other people and handling work pressures and changes—back in 2015, 2016, and 2017.  She described having to miss work because of her anxiety, panic attacks, and physical ailments.  (Tr. 41-42.)   She testified that she had panic attacks "daily" which lasted half an hour or more, leaving her fatigued and unable to complete activities.  (Tr. 42-43.)

Finally, the ALJ heard brief testimony from a vocational expert.  In response to questioning from Schmich's attorney, the vocational expert testified that most employers do not tolerate a 20% reduction in productivity or more than one absence from work per month.  (Tr. 44-45.)

## ALJ DECISION

The ALJ found that Schmich met the insured status requirements of the Social Security Act through June 30, 2017 and had not engaged in substantial gainful activity during the period from her alleged onset date of disability through her date last insured.  (Tr. 17.)  The ALJ then determined that Schmich suffers from obesity and rheumatoid arthritis but that these impairments do not meet or medically equal the severity of one of or a combination of the listed impairments in 20 C.F.R. § 404.[3] (Tr. 18-19.)  The ALJ discussed Schmich's anxiety disorder, depressive disorder, and ADHD but found that they did not constitute severe impairments because they "caused no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [Schmich's] ability to do basic work activities."[4]  (Tr. 18.)

Based on his consideration of the record, the ALJ found that Schmich had an RFC to perform a full range of medium work. (Tr. 19.)  The ALJ did not consider whether Schmich could perform past relevant work.  (Tr. 23.)  He concluded that she could perform jobs that exist in significant numbers in the national economy. (Tr. 23.)  Accordingly, the ALJ denied Schmich's application.

---

[3] Schmich does not object to any of the ALJ's findings regarding her physical impairments.

[4] The functional areas are (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

# ANALYSIS

I.   The ALJ did not err in failing to identify Schmich's anxiety and
     depression as severe impairments.

The claimant bears the burden of proving that her impairments are severe.

Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007) (citation omitted).   While

"[s]everity is not an onerous requirement for [a claimant] to meet…it is also not a

toothless standard."   Id. at 708 (citations omitted).   Under the Social Security

regulations, "an impairment or combination of impairments is not severe if it does

not significantly limit [a claimant's] physical or mental ability to do basic work

activities."   20 C.F.R. § 404.1522(a).   "Basic work activities" are defined as "the

abilities and aptitudes necessary to do most jobs," and include understanding,

carrying out, and remembering simple instructions; use of judgment; responding

appropriately to supervision, co-workers, and usual work situations; and dealing

with changes in a routine work setting.   20 C.F.R. § 404.1522(b)(3)-(6).

Schmich argues that the ALJ erred in failing to identify her anxiety and

depression as severe impairments, contending that "[t]he symptoms reported,

progress notes, and medications prescribed clearly point to mental conditions that

cause more than a minimal limitation on [her] ability to perform basic mental work

activities."   In response, the Commissioner argues that much of the evidence in the

record is from after Schmich's date last insured; that she did not seek treatment on a

regular basis during the relevant time period; that when she did receive treatment, it

appeared to help improve her symptoms; and that her "psychological issues appear to have evolved either in reaction to her physical impairments or due to situational factors relating to familial problems."

The ALJ discussed Schmich's mental health in his written decision. (Tr. 20-22.) He summarized the treatment she received prior to June 30, 2017 and ultimately did not find her anxiety disorder, depressive disorder, and ADHD severe based on his review of this evidence. Records from the relevant period support this conclusion. The first notes in the record (two emergency room visits from November 2015) did not reference any abnormal psychiatric issues and state that Schmich expressly denied depression and suicidal/homicidal ideation. (Tr. 301-318, 528.) She first reported anxiety and depression in October 2016. She claimed that her symptoms affected her ability to do household activities. The provider noted that she denied suicidal ideation; was alert and oriented to time, place, and person; demonstrated good insight and judgment; and prescribed Zoloft. (Tr. 211-213.)

Schmich sought additional mental health treatment in March 2017, reporting stress associated with family issues, her mother's poor health, and her half-sister whom she had never met. She also described difficulty falling asleep and feeling stressed, restless, frustrated, and irritable. She said she had experienced these symptoms for "a couple of years." (Tr. 204-205.) She denied depression and stated that she could still perform activities of daily living and instrumental activities of

9

daily living.  (Tr. 205.)  She also reported that she had stopped taking her Zoloft because it made her feel "jittery."  (Tr. 208.)  The provider noted a stressed mood and overwhelmed affect but otherwise normal mental status exam findings. (Tr. 205, 208.)  She also noted that Schmich had not previously sought psychiatric care and was receiving therapy at her church.[5]   (Tr. 205.)   Schmich received a new prescription for citalopram and was instructed to begin seeing a psychiatrist.  (Tr. 209.)

At an April 2017 appointment, Schmich reported that her anxiety was much improved due to her medication.  (Tr. 186-87.)  The provider noted normal mental status exam findings and instructed her to continue with her medications.  (Tr. 187.) In June 2017, Schmich stated that she had "been under a lot of stress" since the last appointment and reported depression and anxiety but no sleep disturbances or suicidal thoughts.   (Tr. 192, 194.)   She was instructed to continue with her medications and counseling and contact a psychiatrist.  (Tr. 195.)

The above-summarized evidence is the only evidence in the record about Schmich's mental health during her insured period.  Contrary to Schmich's apparent belief, the mere fact that she was receiving mental health treatment during this time does not establish that her diagnoses must be considered severe impairments under

---

[5] As Schmich acknowledges in her brief, she did not submit any evidence of this therapy for the ALJ's review.

the Social Security regulations.   The evidence as a whole supports the ALJ's conclusion that Schmich's mental health diagnoses did not constitute severe impairments.  See Kirby, 500 F.3d at 709 (ALJ did not err in finding that claimant's psychiatric illnesses did not constitute severe impairments when the record demonstrated that he had not sought formal, long-term psychiatric or psychological treatment and his symptoms did not appear to affect his ability to perform basic work activities).

The ALJ observed that "[t]he majority of the medical records submitted related to the period after the date last insured." (Tr. 20.)  He did not discuss any of this evidence in his decision.   This was not error.  An ALJ *may* consider evidence from outside the insured period when evaluating the severity of a claimant's condition; however, such evidence "cannot serve as the only support for the disability claim."  Pyland v. Apfel, 149 F.3d 873, 878 (8th Cir. 1998) (citations omitted).  Furthermore, if an ALJ does consider such evidence, its relevance is limited, as "[e]vidence from outside the insured period can be used in 'helping to elucidate a medical condition *during the time for which benefits might be rewarded*'" (emphasis added).  Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (quoting Pyland, 149 F.3d at 877).

Here, evidence in the record establishes that Schmich continued seeking treatment for her depression and anxiety after June 30, 2017.   She attended

appointments at COMTREA Health Center approximately every three months for medication management.  At some of these appointments, she reported increased depression and anxiety, often related to traumatic events in her life such as her mother's death. (Tr. 358-60, 365, 370.)  Occasionally, she indicated that she found some of her prescriptions ineffective.  (Tr. 361, 364, 367.)    She was prescribed different medications and it appears that they helped manage the severity of her symptoms; at her last two appointments in the record (April 10, 2019 and July 10, 2019), she said that she found her medications "overall…to be of benefit" and appeared to be more relaxed, with an improved mood.  (Tr. 373, 376.)   She consistently reported that she did not have trouble performing activities of daily living or instrumental activities of daily living.  (Tr. 361, 367, 369.)  Additionally, providers consistently noted generally normal mental status exam findings.  (Tr. 356, 359, 362, 365, 370, 374, 377.)  Taken together, this evidence does not indicate that Schmich's mental health symptoms were debilitating even after June 30, 2017. More importantly, it does not offer any insight as to whether her anxiety and depression should have been considered severe impairments before that time.

Schmich emphasizes Ms. Bahr's December 2019 medical source statement, which, like the other evidence detailed above, was not discussed in the written decision.  Ms. Bahr represented that Schmich "has relationship issues with her father and his spouse" and "grief issues related to the death of her mother in July, 2018 and

the death of her grandfather in January, 2019;" she also opined that Schmich's "disabilities seem to come more from her physiological conditions [but] the psychological issues also play a part." (Tr. 618.) Ms. Bahr assessed marked or extreme limitations, in a checkmark fashion, for all of the functional areas. (Tr. 628-30.) It was well-within the ALJ's discretion to decline to consider this opinion, which was rendered two years after the date last insured, especially since Ms. Bahr did not treat Schmich at all during her insured period. [6] Even if the ALJ had chosen to address the opinion, it would have had no impact on the question of whether Schmich's anxiety and depression constituted severe impairments, given that the limitations Ms. Bahr assessed are entirely inconsistent with the evidence in the record from the relevant period (and are also inconsistent with the evidence in the record from after the relevant period).

The ALJ's written decision demonstrates that he evaluated all of the medical evidence of record and adequately explained his reasons for the weight given this evidence in a manner consistent with the regulations. Substantial evidence in the record as a whole supports the ALJ's conclusions regarding Schmich's mental health diagnoses, and his ultimate RFC determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." Fentress v. Berryhill, 854

---

[6] Schmich's brief represents that she first saw Ms. Bahr in March 2018. However, according to the treatment notes and statements made by Schmich's attorney at the hearing, Ms. Bahr did not start seeing Schmich until February 2019. (Tr. 35, 618.)

F.3d 1016, 1021 (8th Cir. 2017) (citing <u>Owen v. Astrue</u>, 551 F.3d 792, 798 (8th Cir. 2008)).

Accordingly,

**IT IS HEREBY ORDERED that** the decision of the Commissioner is affirmed, and Lacey Schmich's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.


                                         _____
                                         RODNEY W. SIPPEL
                                         UNITED STATES DISTRICT JUDGE

Dated this 28th day of July, 2022.